case number 25-5392 and 25-5471 USA v. Mirsad Ramic arguments not to exceed 15 minutes per side Mr. Rayl you may proceed on behalf of the defendant appellant cross-appellate. Thank you. May it please the court. The district court committed procedural but not substantive error when it sentenced Mirsad Ramic. It committed procedural error by applying the terrorism enhancement. The terrorism sentencing enhancement located at 3A1.4 involves an offense a felony that was intended to or promoting a federal crime of terrorism. Federal crime of terrorism is not defined in the sentencing enhancement but is defined by statute at 18 USC 2332 B subsection g5 and it explains it is an offense that was calculated to influence or affect the conduct of government by intimidation or coercion or to retaliate against government conduct. It's my understanding it's not defined so why won't we just rely on the ordinary meaning of government. Your honor we don't rely on the ordinary meaning of government in this particular situation because and it is not defined in the statute article 2 of the Constitution leaves to the president and the president alone the power to recognize a foreign government. But that's formal recognition versus a generic government so why are we gonna switch to formal recognition the good that of course Congress could have said a recognized government and in fact elsewhere in the code they do in fact say just that so why wouldn't we be looking for the term recognized. So your honor the there are parts of the code that are mentioned in Justice Scalia's dissent in Zivotofsky that also reference statutes that say irrespective of recognition. So recognition is not addressed in 2332 B subsection g5. So the issue we have is we think it's analogous to Zivotofsky in the sense of. But wouldn't that I mean then it creates this bizarre situation where you have one president who says this government is not recognized and another president comes in and says okay I recognize this government or however they go through the formal process but the reality is the crime keeps changing and there's no indication Congress intended that through its terminology or elsewhere. Well our our view on this is that it is up to Congress it is up to the president and not to Congress or the courts to determine the recognition question and because of this. But you agree the crime would keep changing based on what the president determines. On Monday it could be a crime and on Friday it might not be. Well we don't think it would affect the crimes. We're not we're not challenging the convictions Mr. Ramek received at trial. Well the enhancement. Okay so on Monday one guy gets sentenced it's recognized by Friday it's not the enhancement doesn't apply. So Afghanistan we withdraw from Afghanistan on Monday before we withdraw if you're fighting against the Afghani government crime then we would draw say no recognition not a crime or not a enhancement I'm sorry. Yes your honor so we think that while it was a more formal delegation of power the Curtis Wright case that's cited in our briefs kind of goes to this and what happened there is Congress by joint resolution said no party or no no one in the United States may sell weapons to the belligerents in the battle for Chaco in South America if the president proclaims that that is a crime and what happened in the Curtis Wright case is Curtis Wright was indicted for that because the president Roosevelt had said that it proclaimed that it would be a crime and that violators would be prosecuted. President Roosevelt later rescinded that proclamation with a Curtis Wright argued to the Supreme Court that that change should have affected the ability for them to be prosecuted and the Supreme Court rejected that idea and it was a crime at the time that it was committed. So we think that while that was a more formal delegation of power we think that that's how this would work and article two has made clear that it is for the president and the president alone to determine who is a recognized government and so that's why in our view and the facts of this case don't involve that particular scenario your honor because one year and six months before Mr. Ramek entered what was then ISIS controlled territory in Syria and signed up to be a fighter in the Syrian Civil War, President Obama had derecognized the Bashar al-Assad regime as the government of Syria. So that wasn't a particularly close-fat question here and so we don't think in addition to the statutory interpretation that it would matter under the facts of this case if they were the recognition had changed. What about the state? I was just going to ask, didn't the government argue alternatively below that this enhancement applied because ISIS was fighting against the United States? Your honor, the United States has raised that argument. The present investigation report indicated that only the Assad regime was the government that its conduct was affecting or influencing. I thought other paragraphs of the PSR said that ISIS was fighting against the United States. Am I wrong about that? That's not my recollection your honor. In paragraph 49 and paragraph 50 of the present investigation report, paragraph 49 is referring to the specific offense characteristic and paragraph 50 the victim-related adjustment which is a objection to the PSR not including the United States as a party. Why do they have to object? Well your honor, by rule and by... But we can affirm for any reason supported by the record and they don't have to object to paragraphs that say ISIS is fighting against the Syrian government because that was obviously a true statement. Your client was in ISIS and fought against the Syrian government so they don't have to object to that. Does it say only? Well your honor, if I may, we don't agree that Mr. Aramik was fighting the Syrian government because the Syrian government had been derecognized, the Assad regime had. Fighting against the Assad regime, however you want to say it. That's our position yes so and we agree your honor that the court may affirm for any reason on the record but as laid out in our briefs and we maintain our procedural barriers to that argument because the court may accept any undisputed fact in the present investigation report as conceded, as accepted. But it doesn't say he was only fighting against the Assad regime. We'll use your terminology. It doesn't say only. It doesn't your honor. I guess I don't understand why the United States would need to object to that because it's a true statement. So you want it to say more. Yes we think because the United States made this argument for the first time in its sentencing memo that if it had an issue with the factual findings listed in the pre-sentence investigation report that said that Mr. Aramik's government which is defined as the Assad regime then it should have spoken up and objected to that finding that there should have been another government there that should have been listed in that part. But why can't they raise that in their sentencing memorandum and then the facts can be determined at sentencing. I don't understand that. Well they have done that your honor. And why is that not okay is my question. Well we think that the opportunity to object had passed. And we maintain our position about the procedural barriers. I mean I think you have to object to untrue statements in the PSR. But if you think the PSR doesn't capture all the conduct, why can't, I mean you can straighten me out on this if I'm wrong about it. But why can't the government say oh the PSR doesn't capture all the facts. Here are some additional facts for your consideration judge. And the judge can determine those by a preponderance. Well we do think that's what happened here. Right and I want to know why that's not procedurally okay. Well because we think that the rule says and the authority from this court says that the court may accept any fact that is not disputed. And we think by mentioning the Assad regime that the PSR is excluding the remaining any other possible government that could be impacted by Mr. Ramek's conduct. But to get to the substance of it, even notwithstanding our procedural barriers, we don't think Mr. Ramek's conduct was calculated to affect the U.S. government. When he left the United States, when he entered Syria, the Assad regime had been derecognized. When he entered Syria, the United States was not involved. The coalition bombing had not started. So his conduct was not calculated to affect the United States. His conduct was calculated to affect the Assad regime. And as the district court found, to establish a caliphate in Syria that would practice true Islam as he had been caused to believe. I thought in the siege of Kobane he was fighting against American forces. He was fighting at the siege of Kobane, he was fighting on behalf of ISIS. The coalition including the United States was involved in the bombing there. But there is no indication that Mr. Ramek's conduct was calculated to influence or affect the American government because Well he posted on social media that planes were circling and drones were hovering and he was referencing the U.S. Well I don't think he mentions the U.S. in that particular phrase or that social media post that the court is referring to. But there is reference about planes and he also tells a co-conspirator before the battle even starts that he had fired a Dushka. So he was a soldier in the army of ISIS as the district court had found. Is it your position that if he didn't know, like subjectively he was ignorant of the fact that the United States would be involved in this particular attack or assault or whatever you want to call it. That therefore the enhancement can't apply even though the United States was in fact involved? Do you think it has to be subjective knowledge or intent? If I may make sure to answer this question, thank you. The right case from this court says that it's specific intent for the terrorism enhancement. And we don't think that's what happened here because when he entered to fight for ISIS in the Syrian civil war, the United States was not involved and in fact the president had derecognized the Assad regime that Mr. Ramek was fighting against. Along with the other groups in the battle. So one more question, why would we measure that from the time that he signed up? Why wouldn't we measure it from the time that he entered this particular battle? Well to the extent that there is a continuing course of conduct, Mr. Ramek's conduct to be a soldier in ISIS didn't change. The United States then entered to assist the coalition forces at the battle of Kobani. At that point shouldn't he say, oh wait, now I'm fighting against my own country? I'm out. Well he had left the United States to join ISIS. ISIS, right. Yes, your honor. So we don't think that his conduct was calculated to influence or affect the United States when he was in ISIS, went to fight this battle, and then the United States began participating in the battle to assist some of the, not all. We want to measure it from the time he signed up for ISIS, not the time that he engaged in this particular conflagration that involved the United States. That's when we should measure his subjective intent. Well we think that evidence goes to his subjective intent and because he continued on the path he was along, we don't think that his conduct was calculated to influence or affect the United States. So you're fighting a quote unquote government, recognized or not, let's leave that aside for a second, and the U.S. comes in and starts fighting and you fight against them, just assume my hypo. You're saying, doesn't matter, because we don't know, his subjective intent at the time he went was not to fight the U.S. government. The fact that they intervened is of no consequence. Well we think it's a relevant fact, but we think here, and specific intent is an element that the government must show beyond a preponderance and that it did not show that Mr. Ramek's conduct was calculated to affect... You're an American of German descent. You go to fight for Germany in World War II, before Pearl Harbor. So the United States has not yet entered the battle, you're just there fighting for, but you're an American of German descent, you're fighting for the Third Reich. Then, the United States enters the war. You're like, oh well, I'm not taking up arms against my own country because when I went to Germany to fight for Germany, the United States was not a participant, and I don't have to get out when the United States joins the war? I mean, I think that's what you're saying. I mean, I understand this is a terrorism, which is slightly different than my analogy, but you get the point. Well, Your Honor, I do, and I think the point we're trying to make is that there are shifting sands, allegiances, alliances, derecognition of government, and we don't think the World War II analogy is particularly on point for a reason like that. But here, it was pretty clear, right? ISIS is fighting Syria and Iraq. That's undisputed. You didn't dispute paragraph 11 of the PSR, did you? As indicated in 2014, ISIS declared itself a caliphate. The terrorist organization asserted it was a legitimate state founded on the proposition of strict adherence to Sharia law, a body of Islamic religious law based on the Quran and Islamic oral tradition. ISIS persistently continued territorial acquisition of swaths of Syria and Iraq in 2014. During this time, the United States, along with the international allies, sought to thwart and impede the goals of ISIS. We agree that the United States was not... Subject to this paragraph. That's not in my recollection, Your Honor. Okay, and we can affirm for any reason on the record. You can, Your Honor. But we think that notwithstanding the procedural barriers that we've raised about waiver and forfeiture, we just think that his conduct was not calculated to influence or affect the United States. I think we understand your argument. Any further questions? You'll have your full rebuttal time. Thank you, Your Honor. Thank you. Good morning. May it please the Court. Amanda Gregory for the United States. I wanted to first address Judge Depar's question about the potential for a definition of a crime going back and forth as a president recognizes or derecognizes. My friend on the other side said that that wasn't what they were advocating because they were advocating just on how this guideline was interpreted. But the definition that we're looking at is found in the U.S. Code, and it does relate to other crimes. So if this Court were to adopt a narrow or restrictive definition of government for a crime of terrorism, this could have an impact beyond the interpretation of this particular guideline. Of course it could. I think what he's arguing is for purposes – I get it, and obviously I was asking that question. But what he's saying is when it comes to sentencing, it's at the time, and whatever it meant at the time, that's what it relates to in sentencing. So at the time, President Obama had not recognized or had derecognized, however you want to say it, the Assad regime. So at the time he was fighting it, his notice – let's just say, because we say everyone knows the law – his notice was this was not a recognized government, so he could go fight it on behalf of ISIS. That's kind of the way I'm interpreting the argument. Without that enhancement applying to him, regardless of the crime. As he said himself, I'm not asking that the crime be thrown out. I'm just asking the enhancement be thrown out. I get the inconsistency, but what would your response be to that? I think they conceded it would always be a crime. Not just in the substantive crimes of terrorism, but also other parts of the U.S. Code that cross-reference the federal crime of terrorism definition, such as some firearms offenses. This court should affirm the district court's holding regarding the definition of government under 2332 B.G. 5. However, it's not necessary for this court to adopt a specific definition of government to resolve this issue. This court could limit itself to finding that Ramech's definition is too restrictive, given the language of the statute, and then find that the Al-Assad government would have met any reasonable definition of government, because recognition is not an element of the everyday meaning of the government. Would Al-Assad and the Taliban meet that same definition? It depends on what definition you're using. Some of the definitions that we have used, or that we cited, tie the definitions to states or territories. Again, there are a lot of extreme hypotheticals that could come up. It depends on what definition that you're using. Give me the definition you want me to use, and then tell me the answer. Using the broad definition that was adopted by the district court in this case, it is potential that that could meet the definition, which is why we're saying you don't necessarily need to adopt the same definition in order to affirm the district court's finding in this case, because you could merely find that any reasonable definition would not include purely the restriction on whether a government is recognized or not. Additionally, as we pointed out in our briefs, this court could also affirm, based on the fact that Ramech's conduct was calculated to influence and affect the government of the United States, there was some discussion regarding the specific intents and whether he would have known that the United States was on the opposite side of this war. I think if you look at the Wright case, some of the limiting language in the Wright case says it's not necessary that that be the defendant's ultimate or sole aim, and then provided an example regarding where a defendant stated that his goal was really to help an oppressed group of Muslims, but the enhancement could still apply. In our brief, we cited the Second Circuit Awan case, because I think there it really sets forth clearly the different contours of the specific intent and how the defendant needed to intend for the conduct, but it's the offense itself that needs to be calculated, rather than the defendant being calculating in trying to impact the government. Here, the offense of joining ISIS, of fighting in this war to try to claim territory in Kobani, is clearly against the United States, and really joining ISIS generally at the time was against the United States. This court, however, should remand for re-sentencing, because the sentence in this case was substantively unreasonable, given the seriousness of the offense. While district courts have broad discretion in sentencing, it's not unlimited, and while not presumptively unreasonable, a significant departure or variance from the recommended guideline range should be supported by a more significant justification than a minor one. Here, the district court departed 72% below the low end of the guidelines, and the reasons provided by the district court do not support the extent of this departure. Here, the record reflects three errors that render the 101-month sentence substantively unreasonable. First, the district court downplayed the seriousness of the offense in a way that conflicts with the undisputed facts. Second, the district court failed to adequately account for the need to protect the public. Is that a substantive reasonableness concern? I thought failure to consider one of the 3553A factors, which includes the need to protect the public, is a procedural problem. I mean, Leanne says that. And does it matter? Well, in this case, I would say that it doesn't matter, but I think it's not a complete failure to account for that. It's not giving it an adequate weight. Does the district court account for it? Well, the district court talked about the need to protect the public because the district court judge was considering that with respect to when they were discussing whether or not Romick would be deported. So it's something that there's evidence in the record that he was considering. Wait, can you back up for a minute? Help me with that. Maybe you're right. If the district court did consider that factor but didn't give it enough weight, maybe that's substantive. But back me up. How did he consider the factor, the need to protect the public? I don't know that he specifically... I should say, I'm also not sure it matters for our disposition of this case because I don't think there's a forfeiture claim on the ground, so we just review for abuse of discretion anyway. But, you know, so that we turn square corners with our case law. I don't believe that he specifically cited protection of the public as one of his reasons when he was giving his sentence at the end. But in the back and forth with the United States and with defense counsel, the United States brought the issue up and the district court then asked the United States how they should factor into the defense argument with respect to the fact that Mr. Romick might be deported and ultimately the district court said it wasn't going to consider that in considering the need to protect the public, but I think that is evidence in the record that that is a factor that the district court was aware of and was considering. So in other words, the defense counsel says, oh, well, he's going to be deported anyway, so we don't need to worry about protecting the public. And that shows that the district court considered that factor. The overall back and forth with defense and with the United States as well. And then what about the fact that he said he was considering it? How do we consider that? Well, he said that he... He goes through the factors and he says I'm considering and he lists off punish the crime in this case to deter other citizens from joining a foreign terrorist organization to promote respect for the law and to protect the public. So how do we consider just his generic recitation of the factors? I get the discussion point. Set that aside for a second. Assume there's no discussion. Would just the generic recitation under our case law be enough? If he says I did it and he doesn't explain it, is that enough? It might be substantially unreasonable, but is it procedurally reasonable or procedurally unreasonable? Certainly, I believe this court has affirmed as procedurally reasonable. Far sparser recitations are, I think, but what this court has emphasized again and again is that you look at the total record, not just whether the district court is checking boxes and you look at whether there's other evidence or statements that indicate either that it was something that wasn't considered or that was considered incorrectly or that it was just something that was rubber stamped. So I think that there is enough in the record to show that the district court did consider this issue but didn't give it enough weight, especially considering the complete lack of remorse that Moramec displayed at sentencing and the potential impact that could have on his recidivism and the need to protect the public. I'm sorry, were you...? No, I was just thinking about if we think he didn't consider that factor, that's procedural error and we reverse anyway. So I'm not sure it matters to you whether we think about this as procedural or substantive, but maybe it does. Does it? I... If we go back and consider protecting the public because you didn't consider it so you committed a procedural error, are you saying no, he really didn't, he'll just do the same thing? Or are you saying... I'm sorry, go ahead. Based on the record, I think that if it was returned on procedural grounds we would have the same outcome with a more fulsome explanation for each point. Because you think he actually considered them all and just reached a substantially unreasonable sentence? Yes. The third point with respect to substantive unreasonableness is that the court gave more weight to the JSON statistics than they could bear in considering nationwide sentencing disparities while placing too little weight on the guidelines and the guideline range itself. Starting with the seriousness of the offense, as we've discussed here some today, that the offense also involved being engaged in battle against the United States. The United States didn't have troops on the ground, they did have planes that were bombing the area, and the planes were involved, and the United States was involved specifically to fight ISIS. The district court minimized the offense conduct in part by finding that it didn't... explicitly saying something about how the United States was impacted by Ramech's conduct. The district court minimized the offense by comparing it to just joining an army with ignoring the fact that it was the ISIS army and the atrocities that had been committed by ISIS. And it put a great deal of emphasis on the fact that Ramech had signed up to be a soldier rather than... Back to the government question, just one quick question. The other side says, as to the United States, you didn't object to the PSR, so you're stuck with it. What's your view of that? Well, we disagree with that. We do find that, you know, I think this court recently in the Dale decision said it's sufficient to find that the United States did not forfeit an argument where, you know, at some point, even I think in that case, after it was prompted by the court, the United States made an argument and it was fully considered by the court. Do you think you should have objected to those paragraphs or do you think you didn't need to? We did not need to because the language in the PSR for supporting the enhancement, it wasn't exclusive. It didn't say he was only fighting these parties. And it was implying the enhancement that we were seeking. I think generally it is not the practice to object with every single alternative basis for applying an enhancement when a PSR applies an enhancement. So the PSR in a drug offense said the defendant had this quantity of cocaine. And then there's some question about, well, did he really have that? And you come in in a sentencing memorandum and say, oh, well, he also had this quantity of heroin that would still support the enhancement. Isn't it fair game at that point? Or, you know, you can have your proofs and you can show that there was heroin? I would think it is, but... I think it is. I think at that point it might be a good ground for the defendant to continue the sentencing if they need more time to prepare for that. But the issue is fully in front of the district court and available for discussion at sentencing, and thus fully preserved for appeal would be our position. Okay. Any further questions? Thank you, counsel. Thank you. There you go. You have four minutes for rebuttal. Yes, sir. Thank you. I'd like to start by talking about the procedural versus substantive unreasonableness. Procedural unreasonableness claims must be made to the district court, and if they are not, they are forfeited, and if plain error review is not requested on appeal, it is waived. So we don't think the government, because it has not made a procedural reasonableness argument, that this court may reverse on procedural unreasonableness grounds when the government has not briefed it and not requested plain error review. We often say government argued X or defendant argued X. They're arguing X, but they're really arguing Y. They just mischaracterized the argument. You see what I'm saying? I can go find a thousand opinions where we have said, they argue substantive reasonableness, but this isn't a substantive reasonableness challenge. It's a procedural reasonableness challenge. So we consider it as procedural reasonableness. I'm not saying that's what we'll do here. I'm just asking, don't we often say that's just by making the objection it's preserved? Well, the objection the government made here was just to the length of the sentence. And so what you're saying, I'm sorry to interrupt you, but just so I understand your argument, what you're saying is, look, they aren't objecting that the district court didn't consider the factors. That would be a procedural reasonableness. They're objecting that when it considered the factors, it placed insufficient weight on some. Our understanding of the government's position, Your Honor, I believe is similar to yours, which is that the government's position is what we understand to be rebalance the factors and do them differently. And this court has said over and over again that we defer to the district court's decisions. When it's here, it started with the guideline range. It considered the 3553A2 factors, including the need to avoid unwanted sentence disparities between like-situated defendants, and it thoroughly explains the reasons that it gave. And we think it did that here. Do you think it considered protecting the public? We think it did, Your Honor. And in response to the discussion earlier about the immigration, the district court said it was not going to consider it. The district court's statement of reasons said, like, notwithstanding that there may be a denaturalization and deportation of Mr. Ramick, the district court imposed a lifetime term of supervisory release, which is obviously the maximum and far more than what it had to do. And it does include a condition that if he's deported, he may not reenter the United States. So it did consider that. I think it also considered that Mr. Ramick was here for four years under surveillance. He left the country. So protecting the public, he was no longer in the United States. So we think the district court did properly consider all the factors. Did the district court ask the BOSTA questions? I just don't know. I don't recall, Your Honor. I do know that the government did object to the sentence at the very end of the sentence. The district court explained the sentence that it imposed. One point I did want to mention is that the district court imposed a 101-month sentence. But it said in its statement of reasons it would have imposed 168 months. And the reason that it didn't is that it said whether by variance or departure, I'm including the 67 months that Mr. Ramick spent in custody in Turkey for the same offense, for the same conduct, for having joined ISIS. And Mr. Ramick's conduct or his recounting of the conditions in that Turkish prison were set out in our sentencing memo. So the district court imposed a 101-month sentence, but it was 168 months punishment that it imposed it. What about the fact that he used the national sentencing disparity while admitting that he really didn't have any idea what kind of offenses these other people had committed? He did. I recall the district court's language being, I don't know all the texture of the cases. But what he did know is that it started with the same primary guideline, 2M5.3 for promoting material assistance or providing material assistance. And then he went straight to the median sentence for a range of people that he doesn't even know what their conduct was. Well, we know from the convictions as far as the primary guideline, from the base offense level, from the terrorism enhancement, and also that these were not excluded from that data were those who had provided substantial assistance and received a 5K discount. So the district court did know some things about it. We know that they didn't get the 5K discount from that data? That's what the PSR reflects. Yes, it says that. The PSR says that? The PSR from Mr. Ramick, when it is explaining the JSON data, says that excluding those who received the 5K discount for substantial assistance. So those folks are excluded from the numbers, from the median and the mean data that the district court was aware of when it imposed Mr. Ramick's sentence. And the Simmons case says, it's cited in both parties' briefs, it's not about terrorism, but it does say that when we're dealing with national disparities, or to avoid national disparities, that that data is particularly helpful when it's a case that the sentence, the possible sentence, is often a less severe sentence. Counsel, do you want to wrap up? I do, Your Honor. If I may just finish my thought, please. Thank you. I think we understand that point. Yes, Your Honor. Thank you. Do we have anything else? Well, Your Honor, we are asking, I may request relief, we are asking that this court vacate the sentence that the district court imposed because it was procedurally unreasonable. The guideline range without the terrorism enhancement would have been 78 to 97 months, and we ask that this court send the case back to the district court to impose a new sentence starting with that guideline range. Thank you. One minute. Any further questions? Okay. Thank you, counsel. Thank you both for your thoughtful arguments. The case will be submitted, and you can call the next case.